```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
JAMES P. RIORDAN,                              :
                              Plaintiff,       :   OPINION AND ORDER
                                               :   GRANTING
        -against-                              :   DEFENDANT'S MOTION
                                               :   TO DISMISS
JOANNE B. BARNHART, Commissioner of the        :
Social Security Administration,                :   06 Civ. 4773 (AKH)
                                               :
                              Defendant.       :
                                               :
---------------------------------------------------------------- x
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Pro Se Plaintiff, James Riordan ("Riordan"), brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the Social Security Administration's final determination that he was not disabled within the meaning of the Social Security Act as of December 31, 1996, the last date upon which Riordan was insured for disability benefits. The Defendant in this case, the Commissioner of Social Security, has moved, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings. For the reasons stated below, I grant the Commissioner's motion and dismiss the Complaint.

**I. Background**

        James Riordan, born December 10, 1950, graduated from high school in 1968 and, beginning in 1977, held a job delivering and installing mirrors in New York City. Tr. 47-52.[1] Between 1977 and 1978, Riordan underwent a surgical procedure, a laminectomy, to alleviate back pain, possibly caused by spinal stenosis, a narrowing and compressive disorder of the spinal cord. See Tr. 50, 102. Riordan returned to his work in 1979, and continued until February 12, 1991, when he sustained an injury while attempting to load a large and heavy mirror into an elevator. Riordan "heard and felt a large pop" in his neck, and lost consciousness.

---

[1] Citations refer to the transcript of the Hearing of October 24, 2005, included as part of the certified copy of the transcript of the record, provided by Defendant as required by 42 U.S.C. § 405(g). [Hereinafter Tr.].

1

Tr. 102-04; Pl.'s Answer 4-6.  Riordan has not worked since then, and has lived on his workers' compensation benefits.

Riordan alleges that he is disabled because of severe pain arising as a consequence of his injury, and that the injury has worsened the effects of his previous back injury. Tr. 117.  He alleges that he has been unable to walk without the assistance of a "walking stick," and even then, not more than one-half block before having to stop to rest. Tr. 121.  He alleges also that he was unable to shop for groceries, because he was unable to walk while carrying a full bag, Tr. 123, nor could he stay on his feet for more than fifteen consecutive minutes, nor remain seated for longer than fifteen minutes without losing sensation in his leg and feeling pain in his back.  Tr. 122.

However, Riordan conceded that he could bathe, cook his meals unassisted, "vacuum, do laundry, [and] use a riding [lawn] mower," Tr. 60, that he can leave his home unassisted and often passes time driving his car. Tr. 58.  He traveled from his Manhattan home, at 1780 1st Avenue, to the Hearing, also in Manhattan, at 26 Federal Plaza, via bus and subway, an eight mile trip taking forty-five minutes or more on a typical business day. Tr. 108.

**A**. *Medical Evidence*

A chiropractor, D.C. Joseph Ciminna ("Ciminna"), treated Riordan from April 1991 to August 1991, a five month span after his injury. Tr. 76-80.  On April 17, 1991,  Ciminna found that Riordan walked "with a normal heel-to-toe gait, and had good muscular development and proportion, but noted (1) mild restrictions of the Riordan's range of motion; (2) a positive finding of spinous ligament injury; (3) a positive finding from a "foramina compression test," indicating radiation of pain in Riordan's spine; (4) Mild/Partial disability, with a (5) "favorable" prognosis.  In August 1991, Dr. Ciminna found, with the exception of mild range of motion

restrictions of the cervical spine, no causally related organic evidence of a nature or degree to substantiate a disability or further care.  Tr. 77

Riordan became a patient of another chiropractor, D.C. Jonathan Steinberg from May 1991, to April 1992.  D.C. Steinberg found "cervical-brachial syndrome, hyperflexion injury, and cervical hypolordosis, and that Riordan was partially disabled from his usual job.  Tr. 83-86.

Dr. Fred Hochberg, a physician hired by the workers' compensation fund, examined Riordan on three occasions, in May and November1992 and March 1993. Tr. 81, 87-91.  On May 4, 1992, Dr. Hochberg reported that Riordan's "cervical spine reveals tenderness extending to the upper dorsal and left trapezius areas." Tr. 90. Dr. Hochberg reported Riordan's complaints of pain, but noted an absence of muscular atrophy, a condition that normally would be associated with disuse of a muscle complex, often resulting from favoring a painful area.  Dr. Hochberg expressed the opinion that Riordan "may have sustained a cervical sprain [and] . . . currently manifests a moderate partial disability," Tr. 91, and recommended a CAT scan or MRI for further evaluation.  However, no additional tests were authorized by workers' compensation, and none seem to have been taken. Tr. 125.  In November 1992, following Plaintiff's second visit, Dr. Hochberg reported "diffuse tenderness in the cervical spine and trapezei regions," and noted that Riordan walked "without a limp," and found "no motor or sensory deficits."  Tr. 87. Dr. Hochberg "still considered [Riordan] to have a moderate partial disability," again noting the need for a CAT scan or MRI of the cervical spine. Tr. 87-88.  Dr. Hochberg's final report of March 1, 1993 affirmed his prior diagnoses.  He noted a normal gait and subjective descriptions of pain, and he again opined that Riordan had a "moderate partial disability," while recommending an MRI as "important to further evaluate the course of management."  Tr. 89.

Doctor Hochberg also noted Riordan's ability to "mount[] and dismount[] from the examining table without assistance." Tr. 89.

Beginning in April 1996 and continuing through April 2004, Riordan was treated by Dr. D.M. Shah. Neither for Riordan's four visits in 1996—the treatments directly at issue in this case—nor for subsequent visits thereafter, do Dr. Shah's notes reflect treatment for or explicit evaluation of pain or limitations relating to Riordan's back and neck injuries, with the exception of one comment regarding lower back pain in 1999. Tr. 71-75. Dr. Shah also noted, inconsistent with Riordan's claims in this case, that Riordan was working as of his first visit in April 1996. Tr. 71. Dr. Shah appears to have treated Riordan for hypertension, obesity, addiction to cigarettes and excessive alcohol consumption, and related risks and symptoms arising out of these conditions, including pulmonary and cardiovascular infirmities. Dr. Shah did note numerous times that Riordan complained of persistent fatigue and weakness. On the occasion of Riordan's April 30, 1999 visit (more than two years after the last date upon which Riordan was insured for disability benefits) Dr. Shah noted Riordan's complaint of pain and numbness in his lower back that radiated down to his legs, and Dr. Shah recommended an MRI. Dr. Shah reported that Riordan's "main problem is . . . [that he is] slightly overweight[, with a] history of hypertension . . . [and] slight chronic pulmonary disease[.]" Tr. 75. It appears that the injuries and disabilities of which Riordan complains and which are at issue in this case were either not considered or deemed insignificant by Dr. Shah.

**B**. *Administrative Proceedings*

Plaintiff applied for disability insurance benefits on May 18, 2004, asserting an inability to work since his injury of February 12, 1991. Plaintiff's claim was first denied by letter of July 1, 2004. By this letter, the Social Security Administration explained that its initial determination was made on the basis of reports by Dr. Shah, Riordan's treating physician from

4

April 1996 to April 2004. Tr. 22.  The letter explained that medical evidence demonstrating the severity of Riordan's condition was lacking, despite the efforts made at obtaining such records. On July 15, 2004, Riordan requested a hearing to review the determination, and ALJ Robin J. Arzt held a hearing on October 24, 2005 at which Riordan was represented by an attorney, James O'Conner. Tr. 24-27, 93-126.  At the Hearing, ALJ Arzt, without expressing disbelief as to Riordan's subjective assertions of pain and disability, focused her inquiry upon that which was "objectively provable in terms of the medical evidence." Tr. 110.

After holding the record open for one month in order to allow Riordan to produce an x-ray image of his neck from the relevant time period (which was not located), ALJ Arzt issued her written decision denying Riordan's claim for benefits under the Social Security Act. ALJ Arzt found that Riordan did not suffer a disability that precluded him from engaging in all substantial gainful activity, as required and defined under the act and regulations promulgated thereunder.  42 U.S.C. § 423(a),(d); 20 C.F.R. § 404.1520(g).  She noted the mandatory five-step sequential evaluation process for evaluating disability claims under the Social Security Act:  (1) Is the claimant performing substantial gainful work? If not, (2) Is his impairment severe? If so, (3) does his severe impairment fall into a category of impairments requiring a presumption of disability? If not, (4) does his impairment preclude him from engaging in his past relevant work? If so, the burden shifts to the Commissioner to (5) demonstrate that there exist a significant number of jobs in the national economy that Riordan could perform on the basis of his residual functional capacity. TR. 12; See  20 C.F.R. § 416.920; Butts v. Barnhart, 388 F.3d 377, 380 (2d Cir. 2004).

ALJ Arzt found that Riordan had two severe impairments through 1996: a neck disorder and asymptomatic but uncontrolled hypertension. Tr. 12.  Though she found that Riordan's impairments did not meet or equal the criteria of those giving rise to a presumption of

5

disability at the third step of the sequential analysis, she found that he was unable to resume his prior work as a mirror installer.  Tr. 12-16.  ALJ Arzt found Riordan's assertions concerning his inability to work to be unsupported by the record.  Noting the reports from Riordan's medical examinations, she found that he suffered neck discomfort but no more than a mild or moderate impairment.  Accordingly, the ALJ found Riordan capable of both "light work" and "sedentary" work as defined under 20 C.F.R. § 404.1567. Tr. 16.  Applying the applicable medical-vocational guidelines at the fifth step of the analysis, the ALJ found that Riordan was capable of performing work existing in the national economy and was therefore not disabled under the act.  See 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Riordan requested a review of the ALJ's ruling by application of January 26, 2006, and the Appeals Council denied the request by notice of March 31, 2006.  This action followed.

## II.  Proceedings in this Court

Plaintiff's Complaint was filed on June 21, 2006, but was received by the Court at the earlier date of May 17, 2006, within sixty days of the Appeals Council's denial of review.  42 U.S.C. § 405(g) (claimant may obtain review by a civil action commenced within sixty days); see Tolliver v. Sullivan County, 841 F.2d 41, 42 (2d Cir. 1988) (pro se filing treated as timely if *pro se* office timely receives complaint, even if filed at later time).  Defendant filed her motion to dismiss, Fed. R. Civ. P. 12(c), on December 21, 2006, and briefing concluded on March 29, 2007.

## III.  Discussion

Section 405(g) of Title 42 of the United States codes provides for judicial review of final decisions of the Commissioner of Social Security.  The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner . . . with or

6

4

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court does not engage in a *de novo* determination of whether or not the claimant is disabled, Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999), but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner. See 42 U.S.C. § 405(g); e.g., Pollard v. Halter, 377 F.3d 183, 188 (2d Cir. 2004). Evidence supporting a decision is "substantial" where a reasonable mind might accept the evidence as adequate. See id. (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

The act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medially determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has promulgated a five-step procedure for evaluating disability claims. See 42 U.S.C. § 423(d)(4)(A) (ordering Commissioner to promulgate regulations prescribing the criteria for determining disability); 20 C.F.R. § 404.1520. The Second Circuit Court of Appeals has interpreted this five-step procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the

>residual functional capacity to perform his past work. Finally, if the claimant is
>unable to perform his past work, the [Commissioner] then determines whether
>there is other work which the claimant could perform.

E.g., Rosa, 168 F.3d at 77. The burden rests on the claimant through the first four steps—he must prove that he is unable to perform his prior work activity. Once he proves that his severe impairment prevents him from performing his past work, the burden shifts to the Commissioner at the fifth stage of the analysis. Using the residual functional capacity assessment performed at step four, the Social Security Administration must establish at the fifth step that the Claimant cannot perform alternative substantial, gainful work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(e); Snipe v. Barnhart, No. 05 Civ. 10472 (LAK) (AJP), 2006 WL 2390277, at *9 (S.D.N.Y. Aug. 21, 2006) ("The SSA uses the residual functional capacity assessment at step four to determine whether the claimant can perform past relevant work, and . . . at step five to determine whether the claimant can do any work.").

The ALJ found that Riordan retained the capacity to perform both light and sedentary work. Tr. 16. To be capable of doing light work, one must be capable of lifting twenty pounds and carrying ten pounds at a time, and jobs in this category require either a good deal of walking or standing, or sitting while pushing and pulling arm or leg controls. 20 C.F.R. § 404.1567(b). Absent limitations relating to dexterity or an inability to sit for long periods, those capable of light work are presumed capable of performing sedentary work. Id. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary . . . ." Id. § 404.1567(a).

The ALJ then consulted the medical-vocational guidelines, which provide a decisional matrix, using age, prior work and educational history as the relevant criteria. See 20

C.F.R. Pt. 404, Subpt. P, App. 2.  These guidelines indicate that a person capable of sedentary or light work, aged forty-six, with a high school education and prior semi-skilled work history is not disabled under the meaning of the Social Security Act. Id.; Tr. 16.

The regulations applied by the ALJ and the results suggested by the vocational guidelines are generally dispositive in a determination of disability, unless additional facts indicate that the guidelines fail to describe the full extent of the claimant's limitations.  See Rosa, 168 F.3d at 78; Loftin v. Barhnart, No. 01 Civ. 1118 (REM) (DF), 2002 WL 31202760, at * 12 (S.D.N.Y. Sept. 3, 2002) (citing Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y. 1996)). Doctors Ciminna, Steinberg and Hochberg all found that Riordan suffered, at most, from a mild or moderate disability, and D.C. Steinberg found that Riordan was only partially disabled from his job, which, unlike the jobs contained within the Commissioner's definition of light and sedentary work, required a good deal of heavy lifting and exertion. Tr. 76-91.  On Riordan's last visit, Dr. Hochberg noted Riordan's normal gait and his ability to mount and dismount from the examining table without assistance.  Tr. 81.

In reports of examinations and treatment covering a period of eight years, Dr. Shah made only a single mention of neck or back pain, and even then, Riordan's pain related to his lower back and not his neck, and from a visit postdating his period of eligibility by more than two years. Tr. 73.  Dr. Shah's lengthy report, which provides detailed insight into Riordan's health, does not mention any neck impairment, nor does it mention any chronic, non-exertional pain.  Instead, Dr. Shah concludes his report with the finding that Riordan's main problem is that he is "slightly overweight." Tr. 75; cf. Pollard, 377 F.3d at 193-94 (holding medical evidence from examination postdating insured period relevant to evaluating claims of disability dating to insured period).

9

The ALJ was not required to take Riordan's subjective, conclusory, and unsupported anecdotal claims regarding disabling pain at face value; she properly made an independent judgment, and found his claims, in light of the contradicting medical evidence, to lack credibility and to be unsupported by the record. Tr. 15-16; see Gianotti v. Barnhart, No. 06 Civ. 909 (SAS), 2007 WL 582755, at *7 (S.D.N.Y. Feb. 22, 2007) (subjective complaints of pain do not alone establish disability and ALJ must make independent credibility determination). And because Riordan made no showing that he suffered from any non-exertional or other limitation that the regulations do not contemplate, ALJ Arzt's decision to rely on the medical-vocational guidelines was proper. E.g., Zorilla, 915 F.Supp. at 667.

I therefore hold that the Commissioner's finding, that Riordan suffered from no limitation "of such severity that he [was] not only unable to do his previous work but [could not], considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," 42 U.S.C. § 423(d)(2)(A), resulted from a proper application of the law and that it is supported by substantial evidence. Accordingly, I grant the Commissioner's Motion to Dismiss, Fed. R. Civ. P. 12(c), and dismiss the Complaint. The Clerk of the Court shall mark the case as closed.

SO ORDERED.

Dated:   May __7__, 2007
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge